**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

BMG MUSIC, a New York general
partnership; ELEKTRA ENTERTAINMENT
GROUP INC., a Delaware corporation;
INTERSCOPE RECORDS, a California
general partnership; WARNER BROS.
RECORDS INC., a Delaware corporation;
VIRGIN RECORDS AMERICA, INC., a
California corporation; UMG RECORDINGS,
INC., a Delaware corporation; SONY BMG
MUSIC ENTERTAINMENT, a Delaware
general partnership; ARISTA RECORDS
LLC, a Delaware limited liability company;
and LOUD RECORDS, LLC, a Delaware
corporation,

Civil Action No.:

                                   Plaintiffs,

                    v.

DOES 1-29,

                                   Defendants.

---

**MOTION FOR LEAVE TO TAKE IMMEDIATE DISCOVERY**

**I.      INTRODUCTION**

        Plaintiffs, record companies who own the copyrights in the most popular sound

recordings in the United States, seek leave of Court to serve limited, immediate discovery on a

third party Internet Service Provider ("ISP") to determine the true identities of Doe Defendants,

who are being sued for direct copyright infringement. Without such discovery, Plaintiffs cannot

identify the Doe Defendants, and thus cannot pursue their lawsuit to protect their copyrighted works from repetitive, rampant infringement.[1]

As alleged in the complaint, the Doe Defendants, without authorization, used an online media distribution system (*e.g.*, a peer-to-peer or "P2P" system) to download Plaintiffs' copyrighted works, distribute copyrighted works to the public, and/or make copyrighted works available for distribution to others. See Declaration of Jonathan Whitehead ("Whitehead Decl."), ¶ 16 and Ex. 1. Although Plaintiffs do not know the true names of the Defendants,[2] Plaintiffs have identified each Defendant by a unique Internet Protocol ("IP") address assigned to that Defendant on the date and at the time of the Defendant's infringing activity. Id. Additionally, Plaintiffs have gathered evidence of the infringing activities. Id. ¶¶ 16-17. Plaintiffs have made copies of several sound recordings each Defendant illegally distributed or made available for distribution, and have obtained copies of a more complete list of files (at times numbering in the thousands) that each Defendant has made available to the public for distribution. Id. and Ex. 1.

Plaintiffs have identified the ISP that provided Internet access to each Defendant by using a publicly available database to trace the IP address for each Defendant. Id. ¶¶ 12, 16. Here, the ISP is Verizon Internet Services, Inc. ("Verizon"). Id. When given a Defendant's IP address and the date and time of infringement, an ISP quickly and easily can identify the name and address of the Doe Defendant (*i.e.,* the ISP's subscriber) because that information is

---

[1] Because Plaintiffs do not currently know the identity of any of the Defendants, Plaintiffs cannot ascertain any of the Defendants' position on this Motion.

[2] When using a P2P system (*e.g.*, KaZaA, eDonkey, iMesh, Grokster, or Gnutella), Defendants typically use monikers, or user names, and not their true names. Whitehead Decl., ¶ 7. Plaintiffs have no ability to determine a Defendant's true name other than by seeking the information from the ISP. Id. ¶¶ 11, 16-17.

contained in the ISP's subscriber activity log files. Id. ¶ 14.[3] Plaintiffs' experience is that ISPs

typically keep log files of subscriber activities for only limited periods of time – which can range

from as short as a few days, to a few months – before erasing the data. Id. ¶ 22.

Plaintiffs now seek leave of Court to serve limited, immediate discovery on

Verizon to identify each Defendant. Plaintiffs intend to serve a Rule 45 subpoena on Verizon

seeking each Defendant's true name, address, telephone number, e-mail address, and Media

Access Control ("MAC") addresses. Once Plaintiffs learn a Defendant's identifying

information, Plaintiffs will contact the Defendant and attempt to resolve the dispute. If the

dispute is not resolved and it is determined that it would be more appropriate to litigate the

copyright infringement claims in another jurisdiction, Plaintiffs will dismiss the particular

Defendant from the present lawsuit and re-file in another jurisdiction. Without the ability to

obtain the Defendants' identifying information, however, Plaintiffs may never be able to pursue

their lawsuit to protect their copyrighted works from repeated infringement. Id. ¶ 22. Thus, the

need for the limited, immediate discovery sought in this Motion is critical.

## II.     BACKGROUND

The Internet and P2P networks have spawned an illegal trade in copyrighted

works. By downloading P2P software, and logging onto a P2P network, an individual can

upload (distribute) or download (copy), without authorization, countless copyrighted music and

video files to or from any other Internet user worldwide. Id. ¶ 7. See Universal City Studios,

---

[3] ISPs own or are assigned certain blocks or ranges of IP addresses. A subscriber gains access to the Internet through an ISP after setting up an account with the ISP. An ISP then assigns a particular IP address in its block or range to the subscriber when that subscriber goes "online." After reviewing the subscriber activity logs (which contain the assigned IP addresses), an ISP can identify its subscribers by name. Whitehead Decl., ¶ 14.

Inc. v. Reimerdes, 111 F. Supp. 2d 294, 331 (S.D.N.Y.), aff'd sub nom., Universal City Studios, Inc. v. Corley, 273 F.3d 429 (2d Cir. 2001) (describing a viral system, in which the number of infringing copies made available multiplies rapidly as each user copying a file also becomes a distributor of that file). Until enjoined, Napster was the most notorious online media distribution system. See A&M Records, Inc. v. Napster, Inc., 239 F.3d 1004 (9th Cir. 2001). Notwithstanding the Napster Court's decision, similar online media distribution systems emerged that have attempted to capitalize on the growing illegal market that Napster fostered. These include KaZaA, eDonkey, iMesh, Grokster, and Gnutella, among others. Whitehead Decl., ¶ 6. Despite the continued availability of such systems, there is no dispute that the uploading and downloading of copyrighted works without authorization is copyright infringement. Napster, 239 F.3d at 1014-15; In re Aimster Copyright Litig., 334 F.3d 643 (7th Cir. 2003), cert. denied, 124 S. Ct. 1069 (2004). Nonetheless, at any given moment, millions of people illegally use online media distribution systems to upload or download copyrighted material. Whitehead Decl., ¶ 6. More than 2.6 *billion* infringing music files are downloaded monthly. L. Grossman, *It's All Free*, Time, May 5, 2003, at 60-69.

The propagation of illegal digital copies over the Internet significantly harms copyright owners, and has had a particularly devastating impact on the music industry. Whitehead Decl., ¶ 9. Retail sales – the principal revenue source for most record companies – declined 7% in 2000, 10% in 2001, and 11% in 2002. Id. ¶ 9. Evidence shows that the main reason for this precipitous drop in revenues is that individuals are downloading music illegally for free, rather than buying it. See In re Aimster Copyright Litig., 334 F.3d at 645.

In an effort to stop the rampant copyright infringement over the Internet, Plaintiffs previously utilized the subpoena process codified in 17 U.S.C. § 512(h) of the Digital

Millennium Copyright Act ("DMCA") to obtain the identities of infringers. Whitehead Decl.,

¶ 14. Since 1998, ISPs routinely have disclosed to Plaintiffs the true names of infringing users in

response to DMCA subpoenas. Id. ¶ 15. On December 19, 2003, however, the Court of Appeals

for the District of Columbia Circuit ruled that the DMCA subpoena provision could not be used

in the D.C. Circuit to obtain information from ISPs performing so-called "conduit" functions.

See Recording Indus. Ass'n of Am., Inc. v. Verizon Internet Servs., Inc., 351 F.3d 1229 (D.C.

Cir. 2003) ("Verizon"). In Verizon, however, Verizon itself conceded that, as an alternative to

using the DMCA subpoena process, Plaintiffs could simply file "John Doe" lawsuits and issue

Rule 45 subpoenas to ISPs to obtain the true identities of infringing subscribers. Whitehead

Decl., ¶ 15. Accordingly, Plaintiffs are pursuing this alternative in the present case.

## III.    ARGUMENT

Courts routinely allow discovery to identify "Doe" defendants. See Wakefield v.

Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999) (error to dismiss unnamed defendants given

possibility that identity could be ascertained through discovery); Valentin v. Dinkins, 121 F.3d

72, 75-76 (2d Cir. 1997) (vacating dismissal; pro se plaintiff should have been permitted to

conduct discovery to reveal identity of defendant); Dean v. Barber, 951 F.2d 1210, 1215 (11th

Cir. 1992) (error to deny plaintiff's motion to join John Doe defendant where identity of John

Doe could have been determined through discovery); Munz v. Parr, 758 F.2d 1254, 1257 (8th

Cir. 1985) (error to dismiss claim merely because defendant was unnamed; "Rather than

dismissing the claim, the court should have ordered disclosure of the Officer Doe's identity");

Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980) ("where the identity of alleged

defendants [are not] known prior to the filing of a complaint . . . the plaintiff should be given an

opportunity through discovery to identify the unknown defendants"); Maclin v. Paulson, 627

F.2d 83, 87 (7th Cir. 1980) (where "party is ignorant of defendants' true identity . . . plaintiff should have been permitted to obtain their identity through limited discovery"); United Parcel Serv. of Am., Inc. v. John Does One Through Ten, No. Civ. A. 1-03-CV-1639, 2003 WL 21715365, at *1 (N.D. Ga. June 13, 2003) (authorizing expedited discovery to determine the identity of defendants); see also Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 389 n. 2 (1971) (noting, without discussion, the use of unnamed defendants).

Indeed, in similar copyright infringement cases brought by the Plaintiffs, and/or other record companies, against Doe defendants infringing copyrights over P2P networks, courts, including this Court, have granted plaintiffs' motions for leave to take expedited discovery. See, e.g., Memorandum Opinion and Order, UMG Recordings, Inc. v. Does 1-199, Civil Action No. 04-093 (CKK) (D.D.C. Mar. 10, 2004) (attached hereto at Tab 1); Order, Motown Record Co., L.P. v. Does 1-16, No. 04C 3019 (N.D. Ill. May 24, 2004) (attached hereto at Tab 2); Order, Arista Records, Inc. v. John Doe, Cause No. 4:04CV0036AS (N.D. Ind. May 24, 2004) (attached hereto at Tab 3); Order, Arista Records, Inc. v. Does 1-9, Case No. H:04-1677 (S.D. Tex. May 20, 2004) (attached hereto at Tab 4); Order, UMG Recordings, Inc. v. Does 1-2, No. CV04-0960 (RSL) (W.D. Wash. May 14, 2004) (attached hereto at Tab 5); Order, Elektra Entertainment Group v. Does 1-5, Civil Action No. 3:CV-04-940 (M.D. Pa. May 11, 2004) (attached hereto at Tab 6); Order, Loud Records, LLC v. Does 1-5, No. CV-04-0134-RHW (E.D. Wash. May 10, 2004) (attached hereto at Tab 7); Order, Interscope Records v. Does 1-37, Case No. A-04-CA-237 LY (W.D. Tex. May 6, 2004) (attached hereto at Tab 8); Order, BMG Music v. Does 1-9, Case No. 5:04-cv-58 (W.D. Mich. May 6, 2004) (attached hereto at Tab 9); Order, Warner Bros. Records Inc. v. Does 1-35, No. 2:04-cv-00084-WOB (E.D. Ky. May 4, 2004) (attached hereto at

Tab 10); Order, <u>Sony Music Entertainment Inc. v. Does 1-2</u>, Civil No. 04-1758 (DSD/JSM) (D.

Minn. May 4, 2004) (attached hereto at Tab 11); Order, <u>London-Sire Records Inc. v. John Doe</u>,

Civil Action No. 7:04CV00208 (W.D. Va. May 3, 2004) (attached hereto at Tab 12); Order,

<u>Virgin Records Am., Inc. v. Does 1-3</u>, Civil Action No. 3-04-cv-701 (JCH) (D. Conn. April 29,

2004) (attached hereto at Tab 13); Order, <u>Maverick Recording Co. v. Does 1-4</u>, Case No. C-04-

1135 MMC (N.D. Cal. April 28, 2004) (attached hereto at Tab 14); Order, <u>Maverick Recording

Co. v. Does 1-2</u>, Case No. 04-CV-149 ML (D.R.I. April 28, 2004) (attached hereto at Tab 15);

Order, <u>Loud Records, LLC v. Does 1-4</u>, Case No. 04-C-289 (E.D. Wis. April 22, 2004) (attached

hereto at Tab 16); Order, <u>Sony Music Entertainment Inc. v. Does 1-200</u>, No. 4:-04-CV-339 CEJ

(E.D. Mo. April 22, 2004) (attached hereto at Tab 17); Order, <u>Virgin Records Am., Inc. v. John

Doe</u>, Civil No. PJM 04-964 (D. Md. April 19, 2004) (attached hereto at Tab 18); Order,

<u>Fonovisa, Inc. v. Does 1-67</u>, Civ. Action No. 04-WM-548 (PAC) (D. Colo. April 7, 2004)

(attached hereto at Tab 19); Order, <u>Warner Bros. Records Inc. v. Does 1-9</u>, Case 04-71058 (E.D.

Mich. April 5, 2004) (attached hereto at Tab 20); Order, <u>Atlantic Recording Corp. v. Does 1-13</u>,

Case No. 1:04CV316 (E.D. Va. April 2, 2004) (attached hereto at Tab 21); Order, <u>London-Sire

Records, Inc. v. Does 1-4</u>, Case No. CV 04-1962 ABC (AJWx) (C.D. Cal. April 2, 2004)

(attached hereto at Tab 22); Order, <u>Arista Records, Inc. v. Does 1-143</u>, Case No. 4:04CV93

(E.D. Tex. Mar. 30, 2004) (attached hereto at Tab 23); Order, <u>Interscope Records v. Does 1-7</u>,

No. 3-04-0240 (M.D. Tenn. Mar. 29, 2004) (attached hereto at Tab 24); Order, <u>Interscope

Records. v. Does 1-4</u>, No. CV-04-131 TUC-JM (D. Ariz. Mar. 25, 2004) (attached hereto at Tab

25); Order, <u>Interscope Records v. Does 1-5</u>, Cause No. 1:04-CV-0542-DFH-TAB (S.D. Ind.

Mar. 25, 2004) (attached hereto at Tab 26); Order, <u>BMG Music v. Does 1-203</u>, Civil Action No.

04-650 (E.D. Pa. March 5, 2004) (attached hereto at Tab 27); Order, <u>Virgin Records Am., Inc. v.</u>

Does 1-44, No. 1:04-CV-438-CC (N.D. Ga. Mar. 3, 2004) (attached hereto at Tab 28); Order,

Elektra Entm't Group, Inc. v. Does 1-7, Civ. Act. No. 3:04-CV-00607-GEB-SRC (D.N.J. Feb.

17, 2004) (attached hereto at Tab 29); Order, Capitol Records, Inc. v. Does 1-250, No. 04 CV

472 (LAK) (S.D.N.Y. Jan. 26, 2004) (attached hereto at Tab 30). This Court should follow the

well-reasoned decisions of these courts.

      Courts allow parties to conduct expedited discovery in advance of a Rule 26(f)

conference where the party establishes "good cause" for such discovery. See Semitool, Inc. v.

Tokyo Electron Am., Inc., 208 F.R.D. 273, 275-76 (N.D. Cal. 2002); Qwest Comm. Int'l, Inc. v.

WorldQuest Networks, Inc., 213 F.R.D. 418, 419 (D. Colo. 2003); Entertainment Tech. Corp. v.

Walt Disney Imagineering, No. Civ. A. 03-3546, 2003 WL 22519440, at *4 (E.D. Pa. October 2,

2003) (applying a reasonableness standard; finding that, absent extraordinary circumstances, "a

district court should decide a motion for expedited discovery on the entirety of the record to date

and the reasonableness of the request in light of all of the surrounding circumstances")

(quotations omitted); Yokohama Tire Corp. v. Dealers Tire Supply, Inc., 202 F.R.D. 612, 613-14

(D. Ariz. 2001) (applying a good cause standard). Plaintiffs easily have met this standard.

      First, good cause exists where, as here, the complaint alleges claims of

infringement. See Semitool, 208 F.R.D. at 276; Qwest Comm., 213 F.R.D. at 419 ("The good

cause standard may be satisfied . . . where the moving party has asserted claims of infringement

and unfair competition."); Benham Jewelry Corp. v. Aron Basha Corp., No. 97 CIV 3841, 1997

WL 639037, at *20 (S.D.N.Y. Oct. 14, 1997). This is not surprising since such claims

necessarily involve irreparable harm to the plaintiff. 4 Melville B. Nimmer & David Nimmer,

Nimmer On Copyright § 14.06[A], at 14-103 (2003); see also Health Ins. Ass'n of Am. v.

Novelli, 211 F. Supp. 2d 23, 28 (D.D.C. 2002) ("A copyright holder [is] presumed to suffer

irreparable harm as a matter of law when his right to the exclusive use of copyrighted material is invaded.") (quotations and citations omitted); see also Taylor Corp. v. Four Seasons Greetings, LLC, 315 F.3d 1034, 1042 (8th Cir. 2003); ABKCO Music, Inc. v. Stellar Records, Inc., 96 F.3d 60, 66 (2d Cir. 1996).

Second, good cause exists here because there is very real danger the ISP will not long preserve the information that Plaintiffs seek. As discussed above, ISPs typically retain user activity logs containing the information sought for only a limited period of time before erasing the data. Whitehead Decl., ¶ 22. If that information is erased, Plaintiffs will have *no* ability to identify the Defendants, and thus will be unable to pursue their lawsuit to protect their copyrighted works. Id. Where "physical evidence may be consumed or destroyed with the passage of time, thereby disadvantaging one or more parties to the litigation," good cause for expedited discovery exists. See Qwest Comm., 213 F.R.D. at 419; Pod-Ners, LLC v. Northern Feed & Bean, 204 F.R.D. 675, 676 (D. Colo. 2002) (allowing Plaintiff expedited discovery to inspect "beans" in defendant's possession because the beans might no longer be available for inspection if discovery proceeded in the normal course).

Third, good cause exists because the narrowly tailored discovery requests do not exceed the minimum information required to advance this lawsuit and will not prejudice Defendants. See Semitool, 208 F.R.D. at 276 ("Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party."). Plaintiffs seek immediate discovery to identify the Defendants; information that may be erased very soon. Plaintiffs (who continue to be harmed by Defendants' copyright infringement, Whitehead Decl., ¶ 9), cannot wait until after the Rule 26(f) conference (ordinarily a prerequisite before propounding discovery) because there are no known Defendants

with whom to confer (and thus, no conference is possible).  There is no prejudice to the

Defendants because Plaintiffs merely seek information to identify the Defendants and to serve

them, and Plaintiffs agree to use the information disclosed pursuant to their subpoenas only for

the purpose of protecting their rights under the copyright laws.

　　　　　Fourth, courts regularly grant expedited discovery where such discovery will

"substantially contribute to moving th[e] case forward."  Semitool, 208 F.R.D. at 277.  Here, the

present lawsuit cannot proceed without the limited, immediate discovery Plaintiffs seek because

there is no other information Plaintiffs can obtain about Defendants without discovery from the

ISP.  As shown by the Declaration of Jonathan Whitehead, Plaintiffs already have developed a

substantial case on the merits against each infringer.  Plaintiffs' complaint alleges a *prima facie*

claim for direct copyright infringement.  Plaintiffs have alleged that they own and have

registered the copyrights in the works at issue, and that Defendants copied or distributed those

copyrighted works without Plaintiffs' authorization.  See Complaint.  These allegations state a

claim of copyright infringement.  Nimmer On Copyright § 31.01, at 31-3 to 31-7; Feist

Publications, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991).  In addition, Plaintiffs have

copies of a sample of the sound recordings each Defendant illegally distributed or made available

for distribution, and have made a copy of a more complete list of files each Defendant has made

available for distribution to the public.  See Complaint Ex. A; Whitehead Decl., ¶¶ 16-17 and Ex.

1.  These more complete lists often show thousands of files, many of them sound recordings

(MP3 files) that are owned by, or exclusively licensed to, Plaintiffs.  See Whitehead Decl., ¶ 17

and Ex. 1.  Plaintiffs believe that virtually all of the sound recordings have been downloaded,

distributed and/or offered for distribution to the public without permission or consent of the

respective copyright holders. Id. ¶ 17.  Absent limited, immediate discovery, Plaintiffs will be unable to obtain redress for any of this infringement.

Finally, Plaintiffs request that the Court's order make clear that Verizon is authorized to respond to the subpoena pursuant to The Cable Communications Policy Act (the "Cable Act").  See 47 U.S.C. § 551(c).  The Cable Act generally prohibits disclosure of personally identifiable subscriber information possessed by cable television companies.  The purpose of this provision was to ensure some level of privacy as to the cable television shows subscribers had ordered or were watching.  It is not a shield to protect a user's wrongdoing and, indeed, the Cable Act *expressly* provides that information can be disclosed pursuant to court order.  While Plaintiffs do not believe the Cable Act was contemplated to apply to cable Internet providers,[4] cable ISPs have expressed concern about their obligations under the Cable Act, and some have taken the position that a court order is required before they will disclose subscriber information.  Hence, Plaintiffs seek an appropriate order.

In general, where federal privacy statutes authorize disclosure pursuant to a court order, courts have held that a plaintiff must make no more than a showing of relevance under the traditional standards of Rule 26.  See Laxalt v. McClatchy, 809 F.2d 885, 888 (D.C. Cir 1987) (court found "no basis for inferring that the statute replaces the usual discovery standards of the FRCP . . . with a different and higher standard"); accord Lynn v. Radford, No. 99-71007, 2001 WL 514360, at *3 (E.D. Mich. March 16, 2001); Gary v. United States, No. 98-6964, 1998 WL 834853, at *4 (E.D. Tenn. September 4, 1998); see also In re Gren, 633 F.2d 825, 828 n.3 (9th Cir. 1980) ("court order" provision of Fair Credit Reporting Act requires only "good faith

---

[4] Plaintiffs do not concede that this provision applies to Verizon, but believe that a properly framed court order will make resolution of that issue unnecessary.

showing that the consumer records sought are relevant") (internal quotation omitted). Plaintiffs plainly have met that standard here, as the identity of Defendants is essential to Plaintiffs' continued prosecution of this action.

If the Court grants this Motion, Plaintiffs will serve a subpoena on Verizon requesting the true names and other identification information about Defendants within 15 business days. Verizon then will be able to notify its subscribers that this information is being sought, and each Defendant will be able to raise any objections before this Court in the form of a motion to quash prior to the return date of the subpoena. Thus, to the extent that any Defendant wishes to object, he or she will be able to do so.

## IV.    CONCLUSION

For the foregoing reasons, the Court should grant the Motion and enter an Order substantially in the form of the attached proposed Order.

Respectfully submitted,

Dated:   11/28/05

Peter Strand
District of Columbia Bar No. 481870
SHOOK, HARDY & BACON L.L.P.
Hamilton Square
600 14th Street, NW
Washington, D.C. 20005-2004
(202) 783-8400
(202) 783-4211 (facsimile)

*Attorneys for Plaintiffs*

12